IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MEDMARC CASUALTY INSURANCE COMPANY,**<br><br>  Plaintiff/Counterclaim<br>     Defendant,<br><br>  v.<br><br>**AVENT AMERICA, INC.,**<br><br>  Defendant/Counterclaim<br>     Plaintiff.<br><br>**PHILIPS ELECTRONICS NORTH AMERICA CORPORATION (as successor to AVENT AMERICA, INC.),**<br><br>  Third Party Plaintiff,<br><br>  v.<br><br>**STATE FARM FIRE AND CASUALTY COMPANY, and PENNSYLVANIA GENERAL INSURANCE COMPANY,**<br><br>  Third Party Defendants. | **Case No. 08 C 5832**<br>**Case No. 09 C 1959**<br><br>**Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

  This case was initially brought by Medmarc Casualty Insurance Company ("Medmarc"), a casualty insurance carrier against its insured Avent America, Inc. ("Avent") and Avent's successor in interest, Philips Electronics North America Corporation ("Philips")(collectively, "Avent") seeking a declaratory judgment relating to several insurance contracts that it has no duty to

defend. Avent has counterclaimed for breach of these insurance contracts and for a declaration that Medmarc has a duty to defend and indemnify it. Avent has also brought Third-Party Complaints against State Farm Fire and Casualty Company ("State Farm") and Pennsylvania General Insurance Company ("Penn General"), also for breach of contract and for declarations that these insurers also have a duty to defend and indemnify arising from other insurance contracts. The parties have each brought Motions seeking a Judgment on the Pleadings (Medmarc and Penn General) or Summary Judgment (Philips and State Farm).

## I. BACKGROUND

Philips' predecessor Avent manufactured baby bottles and related accessories. It is a defendant in a series of class action lawsuits which have been transferred for coordinated pretrial proceedings to the United States District Court for the Western District of Missouri in an MDL action. The class actions each involve the claim that the class members suffered economic loss as a result of Avent's use of an alleged toxic chemical Bisphenol A (2, 2bis(4-hydroxyphenly)-propane) ("BPA") in the manufacture of baby bottles and related accessories without advising the class of BPA's potential harmful effects. None of the underlying actions contain any allegations that the plaintiffs or their children sustained actual bodily injury of any kind. The absence of bodily injury allegations could be explained either because no one has of

- 2 -

yet suffered any bodily injury or because the commonality requirements of Rule 23(a)(2) and Rule 23(b)(3) are difficult to meet. *See Advisory Committee notes* to Rule 23, p. 18, U.S.C.A. Rule 23, FED. R. CIV. PROC. Instead, the various classes are seeking combinations of disgorgement of profits, restitution, injunctive relief, and punitive or exemplary damages.

## II. **DISCUSSION**

The parties appear to assume that Illinois law applies to these actions so the Court will proceed under that assumption. If the words of an insurance contract are clear and unambiguous, a court must give the words their plain, ordinary and popular meaning. *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 491 (2001). A policy holder of a general comprehensive liability policy is entitled to a defense against any actions that raise claims that are covered or potentially covered by the terms of the policy. The duty to defend is determined by comparing the allegations in the underlying complaint to the relevant provisions of the insurance policy. However, a general liability insurer need not defend any action that falls outside the coverage the policy provides, nor need it indemnify the insured under those circumstances as the duty to defend is broader than the duty to indemnify. *Health Care Industry Liability Ins. Program v. Momence Meadows Nursing Center, Inc.*, 566 F.3d 689, 694 (7th Cir., 2009). The relevant inquiry is a determination of the nature of the

underlying complaint, *i.e.,* the type of relief that the claimant is seeking. *Diamond State Ins. Co. v. Chester-Jensen Co., Inc.*, 611 N.E.2d 1083, 1087 (Ill.App. 1st Dist., 1993).

After stating these principles we now turn to the applicable provisions of the insurance policies in question. These policies include Medmarc Policy Numbers 0111370004, 021L30004, and 061L270004 for the periods 4/11/01-4/11/01, 4/1102-4/1103, and 4/1106-4/1107 respectively; Pennsylvania General Policy Numbers CPP1163377-00, CPP1163377-1, CPP1163377-2 and CPP1163377-3 for the periods 4/11/97-4/11/98, 4/1198/4/11/99, 4/11/99-4/11/00, and 4/11/00-4/11/01 respectively; and State Farm Policy Number 93-B7-4664-8 for the period 4/11/94-4/11/96.

Avent has conceded that the policies of all three insurance companies are essentially identical, so the Court will analyze the case based on Medmarc's policy language.

The applicable provisions of the Medmarc policy are as follows:

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "products-completed operations hazard" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion,

- 4 -

>   >   investigate any "occurrence" and settle any claim or "suit" that may result. But:
>   >
>   >   (1)  The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (Section III); and
>   >
>   >   (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.
>   >
>   >   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.
>   >
>   > b.   This insurance applies to "bodily injury" and "property damage" only if:
>   >
>   >   (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>   >
>   >   (2)  The "bodily injury" or "property damage" occurs during the policy period.
>   >
>   >         *    *    *
>   >
>   > **2.   EXCLUSIONS**
>   >
>   > **This insurance does not apply to:**
>   >
>   >         *    *    *
>   >
>   > h.   **Damage to Your Product**
>   >
>   >   "Property damage" to "your product" arising out of it or any part of it.
>   >
>   >         *    *    *

> **j. Damage to Impaired Property or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

* * *

**EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGE**

SECTION I - COVERAGES, Sub-section 2. Exclusions. The following exclusion is added:

When this endorsement is attached to your policy you have no coverage for any punitive or exemplary damages. These damages may be stated as, but not limited to, fines, penalties or multiplication of compensatory awards. It does not matter what the award is called. If it is considered to be punitive or exemplary we will not pay it.

In the event a "suit" is brought against you claiming both compensatory as well as punitive damages we will defend you. However, we will not pay any cost, interest or damages awarded as punitive or exemplary.

* * *

**SECTION V - DEFINITIONS**

\* \* \*

2. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

6. "Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b. Your fulfilling the terms of the contract or agreement.

\* \* \*

11. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Property damages" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

15. "Suit" means a civil proceeding in which damages because of "bodily injury" or "property damage" to which this insurance applies are alleged. "Suit" includes:

17. "Your product" means:

   a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (1) You;

      (2) Others trading under your name; or

      (3) A person or organization whose business or assets you have acquired; and

   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   "Your product" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   b. The providing of or failure to provide warnings or instructions.

   "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

The allegations of the subject Class Action Complaints vary in their precise wording but essentially each alleges that the plaintiff class purchased baby bottles and related accessories manufactured by Avent that were contaminated with a toxic chemical BPA; that Avent did not disclose that its products contained BPA; that Avent falsely represented that its products were safe; that

Avent negligently misrepresented that its products were safe; that Avent deliberately concealed its use of BPA in the manufacture of its product; and that Avent breached implied or express warranties of fitness. The relief sought in the respective class actions also varied in wording, but each included request for some or all of the following relief: injunctive relief against misleading and deceptive practices, damages for breach of contract, restitution, disgorgement of profits, actual damages suffered, and punitive or exemplary damages. What none of the complaints alleges is that any particular person sustained any specific injury as a result of the use of Avent's products. The actions are brought under a host of consumer protection statutes and common law breach of contract, negligence and fraud actions. None of the complaints allege that any particular person sustained any specific injury as a result of the use of Avent's products, nor do they pray for damages for personal injury.

Medmarc and the other insurers argue that none of these actions are covered under the terms of the policies that they issued to Avent because none of the actions seek damages due to bodily injury and none allege an "occurrence" as defined in the policies. At most, the allegations claim that the Avent's products created a potential for causing bodily injury. The respective insurers also contend that the actions are not brought by the users of the products but by the purchasers and the damages claimed at

most constitute economic harm. Medmarc cites *Crawford Laboratories, Inc. v. St. Paul Ins. Co. of Illinois*, 715 N.E.2d 653, 657-58 (Ill.App. 1st Dist., 1999) and *Diamond State Ins. Co. v. Chester-Jensen Co., Inc.*, 611 N.E.2d 1083 (Ill.App. 1st Dist., 1993) in support of its motion. *Crawford* was a declaratory judgment action seeking coverage under a commercial general liability policy where the underlying suit sought civil penalties, restitution, and injunctive relief under a California consumer protection law. The court affirmed a grant of summary judgment in favor of the insurer because the underlying suit did not seek damages for bodily injury or allege an accident. Although the complaint alleged bodily injury, these allegations simply were proffered as evidence of the problems caused by the insured's conduct rather than as a part of a claim for bodily injury. *Diamond State* likewise was a declaratory judgment action seeking a determination of no duty to defend under a comprehensive general liability policy. The underlying suit was brought by the State of Illinois for economic losses as a result of diminished productivity occasioned by employee illnesses resulting from excessive temperatures in state office buildings resulting from improper installation of air conditioning equipment. The policy in question required the insurer to "pay on behalf if the insured all sums which the insured shall become legally obligated to pay as damages because of * * * bodily injury. . . ." In denying coverage the

appellate court noted that the state was not bringing the action on behalf its employees or indemnification for its liabilities to its employees but rather for its economic losses that are alleged to be attributable to illness or injury of its employees. The court stated that the insured's interpretation would distort the meaning of the policy provision and provide coverage for any liability where bodily injury is a tangential factor.

Avent seeks to distinguish these cases by citing language in a Wisconsin appeals court case, *Tara N. by Kummer v. Economy Fire & Cas. Ins. Co.*, 540 N.W.2d 26 (Wis.App.Ct., 1995) that seems to distinguish between bodily injury and damages caused by bodily injury. The underlying suit in that case sought damages to compensate for psychological injury to a young girl (and derivatively by her mother) as a result of being raped by her father while on a visitation at her father's parents' home. The insurer argued that there its policy did not cover psychological injury where no bodily injury was alleged. The court held that the term "bodily injury" was broad enough to encompass claims for emotional or psychological harm, even in the absence of a claim of physical injury, so that, such claims were covered unless excluded by other policy terms. The court subsequently decided that the coverage was properly denied under a policy provision excluding bodily injuries that are "intended by the insured." The *Kummer* case is readily distinguishable from *Crawford* and the *Broadway*

cases (and this case). In *Kummer* the claim was specifically one for personal injury, albeit psychological injury, as a result of the rape. A specific injury as a result of an occurrence was alleged.

The remaining case cited by Avent is *Ace American Ins. Co. v. RC2 Corp., Inc.*, 568 F.Supp.2d 946 (N.D.Ill., 2008). There the court found coverage under a comprehensive general liability policy for money claims for medical monitoring due to exposure to lead paint found on toy trains. The court noted that the claim seeks payment of funds to remediate bodily injury in the form of exposure to lead. However, as Medmarc points out, none of the suits for which Avent seeks coverage prays for reimbursement for medical monitoring.

Lastly Avent refers the court to the case of *Ganjej v. Ralph's*, No. B6279307 (Cal. Superior Ct., Los Angeles County) where Medmarc is providing Avent with a defense for its use of BPA. However, in that case, the complaint alleged that plaintiff actually sustained injury as a result of exposure to BPA. Parenthetically, this would seem to exonerate Medmarc from a charge that it refuses to provide any defense as a result of BPA exposure but does defend where there is an injury alleged. It is therefore apparent that the class action suits for which Avent seeks defense and indemnity are not covered by the policies of the respective insurance companies in this declaratory judgment suit.

### III. **CONCLUSION**

The Court grants the following motions:

1. Medmarc's Motion for Judgment on the Pleadings;

2. Pennslvania General's Motion for Judgment on the Pleadings;

3. State Farm's Motion for Summary Judgment.

The Court denies the Cross-Motions of Avent for Summary Judgment.

The Court declares as follows:

1. Medmarc has no duty to defend under Policies 0111370004, 02IL30004 and 06IL270004;

2. Pennsylvania General has no duty to defend under Policies CPP1163377-00, CPP1163377-1, CPP1163377-2 and CPP1163377-3; and

3. State Farm as no duty to defend under Policy 93-B7-4664-8.

**IT IS SO ORDERED.**

                Harry D. Leinenweber, Judge
                United States District Court

**DATE:** 8/31/2009